IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **EDWARD CHATMAN,** | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 07 C 4973 ) |
| **NEDRA CHANDLER,** | ) ) |
| Respondent. | ) ) ) |

### MEMORANDUM OPINION AND ORDER

Edward Chatman has brought a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Chatman is currently in the custody of the State of Illinois Department of Corrections, incarcerated at the Dixon Correctional Center in Dixon, Illinois. For the following reasons, I deny his petition.

I.

On August 30, 2004, following a bench trial in the Circuit Court of Cook County, petitioner was convicted of one count of aggravated battery of a child. He was sentenced to seven years in prison. Petitioner then appealed to the Appellate Court of Illinois arguing that the State had failed to prove the victim suffered from a permanent disability or that he had the requisite intent, thus failing to prove him guilty beyond a reasonable doubt. On June 15, 2006, the appellate court affirmed. *People v. Chatman*, No. 1-04-2922, slip. op. (Ill. App. Ct. June 15, 2006). Petitioner

filed a petition for rehearing, which was denied on August 1, 2006. Petitioner also filed a *pro se* Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, raising the same two challenges to the sufficiency of the evidence at trial. The Supreme Court of Illinois denied the PLA on November 29, 2006. *People v. Chatman*, 222 Ill.2d 581, 861 N.E.2d 658 (Ill. 2006). Chatman filed the instant petition on September 4, 2007, claiming the State failed to prove him guilty of the aggravated battery of a child beyond a reasonable doubt because they failed to prove (1) he intended to cause a permanent injury to the victim, and (2) the victim suffers from permanent injuries resulting from Chatman's actions.

The Appellate Court of Illinois, the last State court to issue a decision ruling on the merits of petitioner's claims,[1] rejected petitioner's challenges to the sufficiency of the evidence based on the evidence at trial. The appellate court's factual recitation sets forth that on June 11, 2002, the victim - Isaiah Leslie - and his mother were with Chatman in his apartment. Chatman was 24 years-old and Isaiah was 18 months-old. The victim's mother, Tequila Taylor, was dating petitioner, but petitioner was not Isaiah's biological father.

Around 7:25 p.m., Taylor hurt her back after an argument with

---

[1] Under § 2254, courts must review the decision of the last state court to rule on the merits of petitioner's claim. *See Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

2

petitioner and was transported by paramedics to the hospital. Among the responding paramedics was Charles Ward, who testified he saw a toddler in petitioner's apartment and he observed the child sitting on the couch watching television, standing up from the couch to look around, and then return to his seat on the couch. Taylor also testified that Isaiah was a healthy toddler when she left the apartment for the hospital.

Approximately one hour later, paramedics received another call for assistance at petitioner's apartment. When they arrived, they found Isaiah was an "unresponsive baby." The child had one seizure at the scene and a second one on the way to the hospital; he was in critical condition. Upon arriving at the hospital, Isaiah was placed on life support. He would be in the hospital for over a month before being moved to the Rehabilitation Institute of Chicago and then eventually placed in a foster home.

The appellate court reviewed various witnesses' testimony from trial. These included Dr. Michelle Lorand, an expert in pediatrics and child abuse. Dr. Lorand examined the victim while at the hospital on June 12, 2002 and reviewed his CT scan[2] which showed "a loss of differentiation between the gray matter of his brain and the white matter of his brain." *People v. Chatman,* No. 1-04-2922, slip op. at 3-4. The victim's brain was swollen and he had

---

[2]CT imaging uses special x-ray equipment to produce images or pictures of the inside of the body.

bilateral retinal hemorrhages and several fresh looking oval-shaped bruises on his torso, which were consistent with finger grab marks. The child also appeared to have an arm fracture which was over a month old. Dr. Lorand opined that "shaken baby" was the mechanism of injury.

The victim's mother also testified that two years after the incident Isaiah could only say words that are repeated to him, still wears diapers, is paralyzed on his right side, and cannot walk well due to problems with nerves in his legs. He is unable to use a spoon or a fork, needs to wear glasses to see and when he does not wear his glasses his eyes cross.

The appellate court also examined various statements made by petitioner to law enforcement. First, at the scene and upon the arrival of the paramedics around 8:30 p.m., petitioner told paramedic Charise Grassmuck that he was playing a video game when the victim fell off the couch and hit his neck on the ground. Second, he told Officer Josh Alvardo, who arrived at the scene around 8:50 p.m., that he was playing video games when the victim was jumping on the couch and when he tripped and struck his head on the coffee table. Next, on June 13, 2002, he admitted shaking the baby to Assistant State's Attorney Kim Ward. He told Ward that he was playing video games on the couch when the victim awoke to find his mother was gone (to the hospital) and he began to cry. Petitioner then picked up the victim, placed him on his lap and

bounced him. Although the victim calmed down initially, he began to cry again. Petitioner then grabbed the victim by his arms and shook him back and forth while telling him to stop crying. Petitioner shook him "hard" and the victim's head moved "back and forth." After one minute, the victim stopped crying and defendant put him on the couch and resumed playing video games. Petitioner then noticed the victim's eyes were rolled back and it appeared as if he could not breathe. Petitioner attempted CPR and then ran outside the apartment for help.

Petitioner put on a defense at trial. He called Tiara Weston and Juanita Weston Williams, who testified they saw Taylor and the victim on the street entering the apartment on June 11, 2002, and that Taylor threw Isaiah into the apartment. Petitioner also testified and denied shaking the victim. He blamed Taylor for the victim's injuries because she had thrown him headfirst into the apartment.

## II.

The federal statute which governs petitions for writs of habeas corpus, 28 U.S.C. § 2254, provides a "highly deferential standard of review." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). This standard requires that I give state court decisions the benefit of the doubt, only intervening where a state court decision is "objectively unreasonable." *Woodford*, 537 U.S. at 24-27. Under

the terms of § 2254, I may grant a petition for habeas corpus only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceedings. 28 U.S.C. § 2254(d).

III.

The appellate court identified the correct standard for evaluating petitioner's sufficiency claims. In determining a sufficiency of the evidence claim, the court inquires "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The elements of the crime of aggravated battery of child are: (1) the defendant was 18 or older and victim was younger than 13, (2) the defendant intentionally or knowingly caused (3) permanent disability to the victim. *See* 720 ILCS 5/12-4.3(a). Under Illinois law, "a defendant is presumed to intend the probable consequences of his acts, and great disparity in size and strength between the defendant and the victim, as well as the nature of the injuries, may be considered in this context." *People v. Ripley*, 291 Ill. App. 3d 565, 568, 685 N.E.2d 362, 365 (Ill. App. Ct. 1997) (quoting

6

*People v. Rader*, 272 Ill. App. 3d 796, 803, 651 N.E.2d 258, 263 (Ill. App. Ct. 1995)).

With respect to the third and fourth elements, the appellate court found the record contained sufficient evidence that the victim was permanently disabled as a result of being shaken by petitioner and of petitioner's intent. The court found sufficient evidence of permanent disability to the victim based on the testimony by (1) Dr. Lorand, who testified the victim's CT scans revealed "the gray matter and the white matter of the victim's brain were improperly differentiated" and that the victim experienced bilateral retinal hemorrhages, *id*. at 8, and (2) the victim's mother, who identified Isaiah's current disabilities. The court found it was reasonable for the trier of fact to infer permanent disability based on Dr. Lorand's expert testimony, which was corroborated by Taylor. Although lay testimony, the appellate court found the Taylor's testimony was sufficient to demonstrate Isaiah suffered from permanent disability. The court also found sufficient evidence of intent based on petitioner's statements to law enforcement. In particular, the court stressed that petitioner admitted to shaking Isaiah and that, under Illinois law, a court "presumes that a defendant intends the natural and probable consequence of his actions." *Id*. at 9 (citing *People v. Cosby*, 305 Ill. App. 3d 211, 221, 711 N.E.2d 1174, 1182 (1999)). Petitioner admitted to shaking the victim "hard" and he could see his head

7

"moving back and forth."

The appellate court's decision was not contrary to or an unreasonable application of federal law. It identified and applied the correct legal standard, as well as facts sufficient to support Chatman's guilt beyond a reasonable doubt. When all these facts are taken in the best light to the prosecution, petitioner's sufficiency claims must fail as intent can be reasonably inferred from the evidence and there is sufficient evidence of the victim's permanent disability. To the extent that petitioner takes issue with any credibility determinations, I cannot substitute those determinations with my own. *See Ford v. Ahitow*, 104 F.3d 926, 938-39 (7th Cir. 1997).

Petitioner's references to two statements by the trial court, one during the bench trial and the other during sentencing, do not undermine the appellate court's conclusion concerning intent. The statement made during sentencing reads

> Did you want that child to be brain damaged for the rest of his life and unable to carry on a normal life as he was entitled to do when you shook him? Maybe not. But you wanted him to shut up. You wanted him to stop crying so you could play a video game.

Tr. at Y64. This statement does not constitute a finding that petitioner did not have the requisite state of mind, particularly under *Ripley*. 291 Ill. App. 3d at 568-69, 685 N.E.2d at 365-66 (the severity of the injuries was sufficient to sustain conviction for aggravated battery of a child although defendant maintained he did

8

not intend to permanently injure the victim). "A defendant need not admit knowledge for the trier of fact to conclude that the defendant acted knowingly." *Id*. The statement made during the bench trial was

> The Court finds the testimony of the assistant attorney to be clear and credible. The Court finds the State has not met its burden of proof to the charge of attempt[ed] first degree murder and I do not believe that Mr. Chatman was anything more than mad and wanted the child to stop crying. I don't think you wanted to kill this child.

Tr. at 97W. Again, this statement does not constitute a finding that petitioner did not have the requisite state of mind for aggravated battery of a child under Illinois law. *Id*. at 569, 685 N.E.2d at 365-66 (collecting cases). The court simply found petitioner did not have the requisite state of mind for an attempted first degree murder charge. Accordingly, Chatman's petition is denied.

IV.

For the above reasons, I deny Chatman's petition for a writ of habeas corpus.

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
United States District Judge

Dated: April 14, 2008